# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 9, 2010

Charles R. Fulbruge III
Clerk

No. 08-60130

GIRMAY AYUHUNEY ASRES

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A94 922 850

Before WIENER, GARZA, and ELROD, Circuit Judges.

PER CURIAM:*

Petitioner Girmay Ayuhuney Asres seeks review of the order of the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ's) decision denying relief under the Convention Against Torture ("CAT") and ordering that he be removed from the United States. Concluding that the BIA's and the IJ's decisions are supported by substantial evidence, we deny Asres's petition.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-60130

## I. FACTS AND PROCEEDINGS

Asres is a native and citizen of Eritrea who was born in 1974. He claims that prior to his 2006 arrival in the United States, he was conscripted into, and later deserted, the Eritrean military. According to Asres, he served in the military from 1994 to 1996 and again from 1998 to 2006. He claims to have been imprisoned twice during his periods of military service — once for fifteen months because he was unable to dig a hole because of an injury that a superior had inflicted on Asres's hand after he had asked about democracy and repeatedly requested leave to visit his family, and once for thirteen months after inquiring about a friend named Yonatan who allegedly was killed by military officers because they thought he had betrayed them. Asres testified that prison conditions were bad and that he, along with others, had suffered torture and seen prisoners taken away to be killed. Asres contends that in January 2006, he escaped from prison while being taken to the restroom. He then hid for several months before crossing into Sudan and subsequently traveling through several countries, finally arriving in the United States later that year.

When Asres entered the United States, the Department of Homeland Security apprehended him and determined that he was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) because he did not possess a valid entry document. Asres was referred to an asylum officer for a "credible fear" interview because he had indicated an intention to apply for asylum and expressed a fear of persecution or torture.[1]   In that interview, Asres testified that he feared returning to Eritrea because he had escaped from a prison there and believed that the government of Eritrea would kill him for having done so. Determining that Asres had made credible statements and had established a credible fear of torture, the asylum officer concluded that Asres demonstrated "a significant

---

[1] *See* 8 U.S.C. § 1225(b)(1)(A)(I), (ii); 8 C.F.R. § 1235.3(b)(4).

possibility that he could establish eligibility for relief under the [CAT]." Therefore, in late December 2006, the officer issued Asres a Notice to Appear before an IJ for full consideration of his claims.[2] Asres then submitted a Form I-589, Application for Asylum and for Withholding of Removal.[3]

At his initial appearance before the IJ, Asres conceded removability and requested (1) asylum, (2) withholding of removal, and (3) protection under the CAT. The IJ held a hearing on the merits in April 2007. Only Asres testified at that hearing, but he submitted documentary evidence which included human rights reports about Eritrea and three photographs that purported to show him in military uniform. The IJ issued an oral decision concluding that Asres was not credible and that he had failed to sustain his burden of proving eligibility for relief. The IJ held that Asres lacked credibility because, *inter alia*, he "did not testify in a forthright and direct manner and appeared to be evasive although he was asked on more than one occasion to focus in and try to answer the question that was asked." The IJ further based his credibility determination on many perceived inconsistencies among Asres's representations. The IJ held that Asres's asylum and withholding of removal claims failed because he had not shown a well-founded fear of persecution based on any of the five statutory grounds — race, religion, nationality, membership in a particular social group, or political opinion.[4] As for Asres's CAT claim, the IJ determined that although Eritrean security forces have used torture, that fact alone was insufficient "to establish the respondent's eligibility for relief in the absence of credible evidence or testimony specific to this respondent."

---

[2] *See* 8 C.F.R. § 208.30(f) (outlining procedures for a positive credibility finding).

[3] The Form I-589 also may be used to apply for CAT relief.

[4] *See* 8 U.S.C. § 1101(a)(42)(A) (defining "refugee"). Although asylum requires only a "well-founded fear," withholding of removal requires that persecution be "more likely than not." *See Mwembie v. Gonzales*, 443 F.3d 405, 410 n.9 (5th Cir. 2006).

No. 08-60130

Proceeding pro se, Asres appealed only the IJ's denial of CAT protection to the BIA. Consequently, the asylum and withholding of removal claims are no longer at issue.

Later that year, the BIA affirmed the IJ's decision denying relief, concluding that "[b]ecause the respondent did not testify credibly with respect to the central facts offered in support of his claim to CAT protection, we find no reversible error in the Immigration Judge's determination that [Asres] did not prove that he will more likely than not be subjected to future torture in Eritrea."

Having retained counsel, Asres filed the instant petition for review of the BIA's decision.[5] Here, Asres urges primarily that the IJ's adverse credibility determination was applicable only to his claims for asylum and withholding of removal, not to his desertion-based CAT claim. He also contends that his age, 34 years old, confirms his deserter status, explaining that all Eritrean men of his age were conscripted into military service. The Attorney General responds that the BIA and IJ justifiably considered Asres's lack of credibility and were unconvinced that he had deserted the military.

## II. ANALYSIS

### A.    Standard of Review

A petition for review filed in the court of appeals is the exclusive means of judicial review of any claim under the CAT.[6] We generally have authority to review only the BIA's decision, not the IJ's.[7] Yet, when, as here, the BIA affirms the IJ in reliance on his reasoning, we review both decisions.[8]

---

[5] On March 20, 2008, we summarily granted Asres's unopposed motion for a stay of removal pending review. Because our decision today disposes of Asres's petition, we now lift the stay.

[6] *See* 8 U.S.C. § 1252(a)(4). This rule is subject to specific exceptions listed in § 1252(e).

[7] *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009).

[8] *Ahmed v. Gonzales*, 447 F.3d 433, 437 (5th Cir. 2006); *see Wang*, 569 F.3d at 536.

4

No. 08-60130

We review the BIA's and the IJ's legal holdings *de novo* and their factual findings for substantial evidence.[9] Under the standard of substantial evidence, we uphold factual findings "unless the evidence is so compelling that no reasonable factfinder could fail to find otherwise."[10]

It is the fact-finder's duty to assess credibility, and we may not "substitute [our] judgment for that of the BIA or IJ with respect to factual findings based on credibility determinations."[11] We will not reject credibility determinations unless they are "unsupported by the record and are based on pure speculation or conjecture."[12] "As we have previously made emphatically clear, we will not review decisions turning purely on the immigration judge's assessment of the alien petitioner's credibility."[13]

---

[9] *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002).

[10] *Tesfamichael v. Gonzales*, 469 F.3d 109, 113 (5th Cir. 2006).

[11] *Wang*, 569 F.3d at 537.

[12] *Id.* Our recent opinion in *Wang* interpreted the 2005 REAL ID Act § 101(a)(3), (c), (h)(2), Pub. L. 109-13, 119 Stat. 302, which amended the standards for evaluating witness credibility in asylum cases. *Id.* We noted that the amendment conferred even greater discretion on the IJ to determine credibility, and we adopted the Second Circuit's standard that "'an IJ may rely on *any* inconsistency or omission in making an adverse credibility determination as long as the 'totality of the circumstances' establishes that an asylum applicant is not credible . . . . We defer therefore to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling.'" *Id.* at 538 (quoting *Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008) (emphasis in original)). Like Asres, the *Wang* petitioner pursued a CAT claim. Because the IJ made his credibility determination regarding asylum in the same proceeding in which he considered the CAT claim, it is logical that the same deferential standard applies to our review of credibility determinations in both asylum and CAT claims. In any event, in today's case, Asres does not challenge directly the IJ's credibility determination, only the scope of its effect.

[13] *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994) (per curiam) (internal quotation marks omitted).

No. 08-60130

## B.    CAT Framework

Article 3 of the CAT provides:

1. No State Party shall expel, return ("refouler") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.

2. For the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights.[14]

Under the CAT, Asres had the burden of proving that if he were removed to Eritrea, it is more likely than not that he would be tortured by, or with the consent or acquiescence of, public officials.[15]  This determination is one of fact in which the IJ must consider "all evidence relevant to the possibility of further torture."[16]  Additionally, a CAT claim is "separate from the claims for asylum and withholding of removal and should receive separate analytical attention."[17]

---

[14] United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, art. 3, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85, 113.

[15]  *See* 8 C.F.R. § 208.16(c)(2).  The applicable regulation defines "torture" as follows:

[A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

*Id.* § 208.18(a)(1).

[16]  8 C.F.R. § 208.16(c)(3) (providing a non-exhaustive list of relevant evidence); *see Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005).

[17] *Efe v. Ashcroft*, 293 F.3d 899, 906–07 (5th Cir. 2002); *see Chen v. Gonzales*, 470 F.3d 1131, 1139 (5th Cir. 2006) (explaining that CAT claims differ from asylum claims because a

6

No. 08-60130

Because each different type of claim for relief has different statutory requirements, a petitioner's arguments in favor of CAT relief might not be factually related to his asserted grounds for relief under another claim. For this reason, an adverse credibility determination in the asylum context need not necessarily affect the disposition of a petitioner's CAT claim.[18]

## C.    Application of the IJ's Adverse Credibility Determination

Asres contends that he deserted the Eritrean military and that, as a deserter, the government of Eritrea would torture him. He theorizes that the BIA and the IJ reached their contrary conclusions by impermissibly relying on the IJ's adverse credibility determination, which Asres asserts was applicable only to his asylum and withholding of removal claims (based on past persecution), not his claimed deserter status on which his CAT claim was based (for probability of future torture). Even though Asres challenges the influence that the adverse credibility determination had on his CAT claim, he does not actually challenge that determination. Our inquiry begins — and ends — with the dispositive question whether substantial evidence supports the conclusion that Asres failed to establish that he deserted the Eritrean military. (Of course, if there were evidence that Asres did not desert but that Eritrea nevertheless would consider him a deserter, that would alter our analysis.)

Both the Seventh and Ninth Circuits have remanded CAT claims to the BIA when it relied on prior credibility determinations that were *unrelated* or

---

CAT claim (1) need not be based on one of the five asylum grounds, (2) must prove torture, not simply persecution (or a well-founded fear of persecution), and (3) must prove likelihood of torture by "more likely than not," a higher standard than "well-founded fear"); *Efe*, 293 F.3d at 906 (requiring that a petitioner's successful withholding of removal claim show that it was "'more likely than not' that his life or freedom would be threatened by persecution on account of one of the five categories mentioned under asylum" (quoting 8 C.F.R. § 208.16(b)(1)).

[18] *See, e.g.*, *Mansour v. INS*, 230 F.3d 902, 908 (7th Cir. 2000).

*insignificant* to the CAT claims.[19]  In *Mansour*, the Seventh Circuit remanded a case to the BIA for further proceedings because the court was "not comfortable with allowing a negative credibility determination in the asylum context to wash over the torture claim; especially when the prior adverse credibility determination is not necessarily significant" to the CAT claim.[20]  As an Assyrian Christian, the petitioner in *Mansour* based his CAT claim on Iraq's abuses of his ethnic and religious group, as documented by the State Department's Country Report on Human Rights Practices ("Country Report") for Iraq.[21]  In contrast, that petitioner's asylum claim was "not centere[ed] . . . around his ethnic/religious background"; it instead related to alleged past abuses and his status as a military deserter.[22]  Because the two claims "differ[ed] enough in nature," each warranted individual treatment and the credibility determination in the asylum context could not be relied on to defeat the CAT claim.[23]

Like the Seventh Circuit before it, the Ninth Circuit in *Kamalthas* remanded a petitioner's analytically independent CAT claim to the BIA for further proceedings.[24]  In that case, the Sri Lankan petitioner claimed that as a Tamil male, he would be tortured in violation of the CAT on his repatriation.[25] The BIA previously had rejected the petitioner's asylum claim, determining that his account of *past persecution* lacked credibility.[26]  The *Kamalthas* court rejected

---

[19] *See Kamalthas v. INS*, 251 F.3d 1279 (9th Cir. 2001); *Mansour*, 230 F.3d 902.

[20]  230 F.3d at 908.

[21] *Id.*

[22] *Id.* at 905–06, 909.

[23] *Id.* at 909.

[24] 251 F.3d at 1284.

[25] *Id.* at 1280.

[26] *Id.*

the BIA's overreliance on its prior adverse credibility determination and cautioned that the finding was not necessarily determinative of the CAT claim.[27] In vacating and remanding to the BIA for further proceedings, the court recognized evidence that corroborated the petitioner's claim of the widespread torture of Tamil males.[28]

In *Efe v. Ashcroft*, we described *Mansour* and *Kamalthas* as decisions in which the courts "remanded cases for further consideration of CAT claims due to overreliance on an adverse credibility ruling."[29] Yet, in our *Efe* decision, we held that *Mansour* and *Kamalthas* were inapplicable when the "credibility assessment . . . goes directly to the issue" of torture *vel non*.[30] The *Efe* petitioner contended that the Nigerian government would torture him because he had killed a police officer during a political demonstration.[31] The IJ determined that the petitioner lacked credibility about, *inter alia*, his claimed involvement in the demonstration and whether he had killed the officer.[32] In denying relief under the CAT, we concluded that *Mansour* and *Kamalthas* were distinguishable as cases that addressed claims of "a *general situation of torture among men of a certain ethnic or religious background* shared by the alien."[33] The *Efe* petitioner

---

[27] *Id.* at 1284.

[28] *Id.*

[29] 293 F.3d 899, 907 (5th Cir. 2002).

[30] *Id.* at 907–08.

[31] *Id.* at 901.

[32] *Id.* at 902.

[33] *Id.* at 907 (emphasis added).

made no such claim, instead alleging that he would be arrested and tortured for his *acts*.[34]

*Efe* controls the instant case. Asres's CAT claim depended on the IJ's believing that Asres had deserted the Eritrean military. Similarly, the *Efe* petitioner's CAT claim depended on the IJ's believing that the petitioner would be tortured for a specific act, his murder of a police officer.[35] In contrast, the *Mansour* and *Kamalthas* petitioners' CAT claims depended on each petitioner's immutable characteristics — either being an Assyrian Christian or a Tamil male — which were not disputed.[36]

As in *Efe*, the IJ's determination that Asres lacked credibility was relevant to his CAT claim, and the IJ and the BIA did not err in considering it.[37] When Asres's testimony is disregarded for lack of credibility, the only independent evidence supporting his claims were the photographs purporting to show him in uniform. The IJ determined, however, that it was "not clear" whether the individual in the photographs was in fact Asres. The IJ also stated that even if Asres was the individual depicted in the photos, they would show only that he was once in the military, not necessarily that he deserted. The rejection of his only proffered evidence, along with the adverse credibility determination, is sufficient to deny Asres's petition for review on the basis that the evidence is not so compelling that no reasonable fact-finder could rule in favor of the Attorney

---

[34] *Id.* at 907–08.

[35] *Id.*

[36] *Kamalthas v. INS*, 251 F.3d 1279, 1283 (9th Cir. 2001); *Mansour*, 230 F.3d at 908.

[37] Nor do we agree with Asres that the IJ, and subsequently the BIA, conflated his asylum and CAT claims. Review of the IJ's decision confirms that he did not believe Asres was credible, generally *or* specifically as to desertion. And, the BIA clearly understood Asres's argument, which it described as a claim "that he is a deserter . . . and for this reason he faces a probability of suffering future torture at the hands of Eritrean officials in the event of his return."

General.[38] And, because Asres failed to establish that he deserted the Eritrean military, we do not reach the question whether Eritrean officials would torture a deserter following his repatriation. We pause briefly, however, to entertain Asres's claim that his age alone — 34 years old — entitles him to relief.

According to the Amnesty International Report on Eritrea for 2005, "[n]ational service, compulsory for all men and women aged between 18 and 40[,] continued to be extended indefinitely."[39] In the Attorney General's view, the 18-to-40-year range constitutes 22 years of eligibility, not mandatory service. Asres would have us (1) hold that any Eritrean between the ages of 18 and 40 who is not currently serving in the military is eligible for relief under the CAT as a deserter (assuming that Eritrea in fact tortures its deserters), and (2) ignore any possibility for exceptions to the rule of 22 consecutive years of service, something that is at best unlikely, or in the Attorney General's words, "absurd, for it would mean that [the] majority of the able-bodied persons and almost all women of childbearing age would be serving in the military." In his briefing to us, Asres appears to recognize that "not every Eritrean man falling in that age range presently serves in the military." Yet, he contends that his age nevertheless proves his case. Given our deferential standard of review — substantial evidence — Asres's argument on this point is unpersuasive. Once we

---

[38] If presented with different facts, we might demand an individual credibility determination on CAT-specific issues. *See Singh v. Ashcroft*, 398 F.3d 396, 404–06 (6th Cir. 2005) (requiring such specificity). Because Asres's putative bases for relief were all intertwined such that the IJ's credibility determination was applicable to his CAT claim, we demand no such specificity. *See Alemu v. Gonzales*, 403 F.3d 572, 576 (8th Cir. 2005) ("[S]eparate analysis is required only when there is evidence that an alien might be tortured for reasons unrelated to her claims for asylum and withholding of removal.").

[39] Providing different information than Amnesty International, the Country Report for Eritrea states that all men between 18 and 45 years old and women between 18 and 27 years old must "participate in the national service program, which included military training and civilian work programs. Some citizens reported enlistment in the national service for many years with no prospective end date." Both reports are part of the record on appeal.

No. 08-60130

acknowledge that at least some Eritreans in Asres's age group are not in the military and did not desert, without additional evidence from Asres, we conclude that the evidence does not compel holding that any reasonable fact-finder would have ruled in his favor on the basis of his age.

### III.  CONCLUSION

We deny Asres's petition for review because the IJ's and the BIA's decisions are supported by substantial evidence.

PETITION DENIED.